# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

CHOCOLATE MAGIC LAS VEGAS LLC,

Plaintiff,

v.

BLAIR ELLIOT FORD, JR.; CINDY WIX-INGLING; NORMAN VIDA; and ALICE KELLY,

Defendants.

Case No. 2:17-cv-00690-APG-NJK

**ORDER (1) DENYING DEFENDANT'S SPECIAL MOTION TO DISMISS AND (2) GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

(ECF No. 21)

In late 2016 and early 2017, the employment relationship between plaintiff Chocolate Magic Las Vegas LLC (Chocolate Magic) and the defendants deteriorated to the point the defendants resigned or were terminated. In the aftermath, Chocolate Magic sued these former employees on multiple causes of action.

Defendant Blair Elliot Ford, Jr. moves to dismiss the claims against him. He argues that Chocolate Magic's suit is a strategic lawsuit against public participation (SLAPP) based on his communicating to certain individuals about possible health code violations. Ford seeks dismissal under Nevada's anti-SLAPP statute. He also moves to dismiss nearly all the claims against him under Federal Rule of Civil Procedure 12(b)(6). Chocolate Magic responds that the suit cannot be dismissed under the anti-SLAPP statute because Ford has not met his initial burden of showing that the lawsuit arose from public communications. Chocolate Magic also argues that it will prevail on the merits of its claims, precluding a dismissal under Rule 12(b)(6).

Because Ford's communications did not form the basis for Chocolate Magic's complaint, I deny his special motion to dismiss under the anti-SLAPP statute. But I grant in part his Rule 12(b)(6) motion to dismiss because some of the claims are not properly pleaded.

/ / / /

/ / / /

## I. BACKGROUND

Chocolate Magic operates the Hershey's Chocolate World Las Vegas retail attraction under a sales-based licensing agreement with The Hershey Company (Hershey's), and with a revenue sharing lease agreement with the New York-New York Hotel & Casino (New York-New York). ECF No. 1 at 5. Chocolate Magic hired Ford to be general manager in February 2013, and the attraction opened in June 2014. *Id.* at 6. Ford and co-defendant Cindy Wix-Ingling were given control of the store's inventory and responsibility for new product development. *Id.* at 7.

By summer of 2016, sales were 25% below budget while expenses continued to grow. *Id.* The store's profitability declined 90% year over year in August 2016 while there was a significant increase in overtime payments. *Id.* Chocolate Magic hired Douglas Birrell, a consultant, to "oversee a course correction." *Id.* at 8. Ford and his co-defendants allegedly instructed employees to refrain from reporting any problems or concerns to Birrell or Chocolate Magic's corporate office. *Id.* After an investigation, Birrell emailed Ford regarding the need to turn the store around. *Id.*

In November 2016, Hershey's conducted a two-day assessment of Hershey's Chocolate World Las Vegas. *Id.* at 9. A "sharply negative and critical" written assessment was provided to Birrell, who forwarded it to Ford. *Id.* Chocolate Magic also issued Ford a disciplinary notice on December 1, 2016. *Id.* Ford shared this notice with his co-defendants, and the following day all four lodged a complaint with Chocolate Magic's human resources department alleging a hostile work environment. *Id.*

Ford and his co-defendants allegedly attempted to convince subordinate staff to quit and made disparaging comments to them. *Id.* at 10. On January 11, 2017, Ford advised Chocolate Magic that defendant Norman Vida was resigning. *Id.* The next day Ford, Wix-Ingling, and defendant Alice Kelly tendered their resignations. *Id.* Ford then sent a letter to Suzanne Jones, an executive at Hershey's, in which he "accused Chocolate Magic of violating Nevada state health standards and endangering the public by re-using wrapped, covered candy that had been segregated in [a] special collection container . . . ." *Id.* at 11.

Chocolate Magic reassigned at least three employees from other operations to Hershey's Chocolate World Las Vegas on an emergency basis. *Id.* It hired an inventory consultant and discovered that thousands of dollars' worth of product was spoiled or missing. *Id.* Chocolate Magic terminated Kelly before her resignation date and put Ford on paid vacation leave until his resignation became effective. *Id.* at 12. After the termination of his employment, Ford filed a claim for unemployment insurance benefits with the Nevada Department of Employment, Training, and Rehabilitation (DETR). ECF No. 33-24. In that claim, Ford stated that he left his job because he was retaliated against for "blowing the whistle" about the repurposing of candy. *Id.* at 14–17.

## II. ANALYSIS

### A. Anti-SLAPP Special Motion to Dismiss

When considering a special motion to dismiss pursuant to Nevada's anti-SLAPP statute, I must first determine "whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." Nev. Rev. Stat. § 41.660(3)(a). If the moving party has met this burden, I must then "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim." *Id.* § 41.660(3)(b). If I determine the plaintiff has established a probability of prevailing on the claim, "the determination on the special motion has no effect on the remainder of the proceedings." *Delucchi v. Songer*, 396 P.3d 826, 831 (Nev. 2017). "Good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" has been defined in Nevada to include a "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum." Nev. Rev. Stat. § 41.637(4).

////

////

*1. Letter to Suzanne Jones of Hershey's*[1]

Ford argues that his letter to Jones, even though a private communication to a single person, can be considered to have occurred in a public forum. However, the Supreme Court of Nevada recently stated that § 41.637(4) does not apply where communications are between private individuals because those communications are not in a place open to the public or in a public forum. *SPG Artists Media, LLC v. Primesites, Inc.*, No. 69078, 390 P.3d 657 (Table), 2017 WL 897756, *1 n.2 (Nev. Feb. 28, 2017). Moreover, a "business letter addressed to the intended recipient . . . does not fit the definition of a public forum." *Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP*, 53 Cal. Rptr. 3d 256, 260 (Cal. App. 2007).[2]

Ford's argument relies on *Ruiz v. Harbor View Cmty. Ass'n*, 37 Cal. Rptr. 3d 133 (Cal. App. 2005), but that reliance is misplaced. In that case, the California court held that the private letters at issue fell under § 425.16(e)(4) of California's anti-SLAPP statute, which is the catch-all provision of actions that may give rise to an anti-SLAPP special motion to dismiss. *Ruiz*, 37 Cal. Rptr. 3d at 141. That section includes "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4). The Nevada statute does not have a similar catch-all provision. *See* Nev. Rev. Stat. § 41.637.

Ford also contends that under *Du Charme v. Int'l Bhd. of Elec. Workers, Local 45*, 1. Cal. Rptr. 3d 501 (Cal. App. 2003), his private communication with upper management at Hershey's occurred in a public forum because Hershey's is a large, powerful organization that may impact

---

[1] Ford also argues in his motion that he communicated with other officials at Hershey's and New York-New York. ECF No. 21 at 9. These communications are not mentioned in Chocolate Magic's complaint, which addresses only Ford's letter to Jones, and therefore I will not address them here. *See Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1191 ("[F]or the purposes of anti-SLAPP, the conduct from which a claim arises is the conduct that constitutes the specific act of wrongdoing challenged by the plaintiff."). However, the same analysis would apply to those communications.

[2] Because the Nevada anti-SLAPP statute is similar to California's statute in purpose and language, I look to California's interpretation of its statute as persuasive authority. *See, e.g., John v. Douglas Cty. Sch. Dist.*, 219 P.3d 1276, 1283 (Nev. 2009), *superseded by statute as stated in Shapiro v. Welt*, 389 P.3d 262, 266 (2017).

the lives of many people. Chocolate Magic responds that Ford misinterprets that case, which analyzed the public interest requirement of an anti-SLAPP motion, not the public forum requirement.

In *Du Charme*, the court held that the definition of public interest is broadly construed and "may . . . include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." 1 Cal. Rptr. 3d at 507 (quotation omitted). The court ultimately held that while the communications at issue may have been in a public forum because they were posted on a public internet site, they did not involve an issue of public concern. *Id.* at 510–11. *Du Charme* dealt with defining issues of public interest and therefore does not support Ford's argument that simply because his communication was with an individual in the Hershey's corporation, it was in a public forum.

Ford's reliance on *Damon v. Ocean Hills Journalism Club*, 102 Cal. Rptr. 2d 205 (Cal. App. 2000), is similarly misplaced. In that case, the court held that televised and open board meetings of a residential community's homeowners' association constituted public fora, as did a newsletter distributed to 3,000 recipients. *Damon*, 102 Cal. Rptr. 2d at 209–10. In the present case, Ford did not air his grievances at an open meeting or through a widely distributed publication. He wrote a private letter to one individual. This communication was not open to the public, nor did it occur in a setting that could be considered a public forum.

### 2. *Communications with DETR*

Ford has not pointed to any facts showing that Chocolate Magic's lawsuit arose from his unemployment benefits claim. "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." *Navellier v. Sletten*, 52 P.3d 703, 708–09 (Cal. 2002). The "critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Id.* at 709 (emphasis in original). The "moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." *Baral v. Schnitt*, 376 P.3d 604, 617 (Cal. 2016). Ford cannot rely on his DETR claim as the

specific conduct challenged by Chocolate Magic because Chocolate Magic never mentions Ford's communications to DETR in its complaint. *See Jordan-Benel*, 859 F.3d at 1191). Because Ford has not shown that the lawsuit arose from those communications, he cannot prevail on his motion.

Even if I addressed these communications, I would find that they did not occur in a public forum. Ford argues that his communications with the DETR constitute speech in a public forum because DETR is a public entity, citing *Wiseman v. Schultz*, No. 03 C 382, 2004 WL 783084 (N.D. Ill. Jan. 9, 2004). That case is inapposite as it primarily addresses whether speech by a public employee is constitutionally protected. *Wiseman*, 2004 WL 783084, at *2. The plaintiff in *Wiseman* was a police officer suing his former employer for retaliation based on the exercise of his First Amendment rights. *Id.* at *1. The officer had co-authored a memo to town administrators about police drug use, made a statement to the State's Attorney about possible corruption in the police department, and made a statement to the Equal Employment Opportunity Commission regarding a fellow officer's discrimination claim. *Id.* The court ruled that these actions constituted speech in a public forum. *Id.* at *3. But this holding was made in the context of evaluating whether the officer's comments were matters of private or public concern, in order to decide whether they were entitled to First Amendment protection. *Id.* And the court's only support for this finding is a citation to a Seventh Circuit case holding that a police officer's communications with his superiors were a matter of public concern. *Id.* (citing *Delgado v. Jones*, 282 F.3d 511, 518 (7th Cir. 2002)).[3] Furthermore, the facts at issue in the present case are sufficiently distinguishable. Ford is not a public employee communicating with superiors, he is a private individual who filed a claim for unemployment benefits and made allegations in connection with that claim.

The communications pointed to by Ford either did not occur in a public forum or a place open to the public or did not form the basis of Chocolate Magic's lawsuit. Because Ford has not met his initial burden, it is unnecessary to examine whether his communications dealt with a

---

[3] *Delgado* did not hold that public employee communications with superiors were made in a public forum, only that they could be considered a matter of public concern under the specialized First Amendment analysis for public employee speech. *Delgado*, 282 F.3d 511, 518–19.

matter of public interest or to continue the anti-SLAPP analysis. Therefore, I deny Ford's special motion to dismiss the suit.

### B. 12(b)(6) Motion to Dismiss

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

I apply a two-step approach when considering motions to dismiss. *Id.* at 679. First, I must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported by only conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

Second, I must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges facts that allow me to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and citations omitted). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires [me] to draw on [my] judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*1. Breach of Contract*

Chocolate Magic alleges Ford breached his contract by neglecting and refusing to render the services for which he was hired, violating the "No Raiding of Employees" provision in his employment agreement, and refusing to give assurances that he returned all company property. Ford argues that there is no contract between him and Chocolate Magic, and that consequently he cannot have breached a contract. Ford also argues that Chocolate Magic did not sufficiently allege he solicited employees to leave their employment because the company does not point to any facts showing that his co-defendants did not decide to resign on their own.[4] Finally, he argues that the allegation that he did not return company property must be dismissed because Chocolate Magic did not identify any property not returned. Chocolate Magic responds that the parties' at-will employment relationship is contractual under Nevada law. Chocolate Magic argues that Ford "engaged in a campaign to empty Chocolate Magic of as many of its personnel as he could." ECF No. 33 at 19. The company also argues that Ford failed to respond to work emails and to show up to work.

A breach of contract claim under Nevada law requires "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Ctrs., L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011) (quotation omitted). Generally, a contract is valid and enforceable if there has been "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). In Nevada, at-will employment is contractual, and an at-will employment agreement is a contract. *D'Angelo v. Gardner*, 819 P.2d 206, 211–12 (Nev. 1991); *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 105–06 (Nev. 2008) (en banc).

---

[4] In his reply, Ford makes a new argument that the agreement provision prohibiting him from soliciting employees applies only after his termination. ECF No. 47 at 8–9. I decline to consider this argument. *See Vazquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("[W]e do not consider issues raised for the first time in reply briefs.").

Here, Ford was offered the job as general manager and accepted by signing an employment agreement. Because this at-will employment relationship is contractual, valid, and enforceable, Ford's argument that there was no contract fails.

Chocolate Magic alleges that Ford (and the other defendants) attempted "to solicit subordinate store and warehouse staff to quit the employ of Chocolate Magic" in violation of a "No Raiding" clause in his employment agreement. ECF No. 33 at 10. The complaint does not rely solely on the fact that Ford's co-defendants resigned. Chocolate Magic has alleged sufficient facts to make this part of the claim plausible.

However, Chocolate Magic does not respond to Ford's argument that the allegation regarding return of company property was insufficiently pleaded because the company has not identified any property not returned. Thus, Chocolate Magic has consented to this part of the motion being granted. L.R. 7-2(d). In addition, the complaint does not clearly allege how Ford breached this contractual provision. Chocolate Magic alleges that "Ford has refused to give assurance that he has returned all such items." ECF No. 1 at 13, ¶ 79(c). But there is no contractual requirement that Ford give such assurances and Chocolate Magic has not identified any unreturned property. Therefore, I grant Ford's motion to dismiss as to the breach of contract claim based on the non-return of property. I will allow Chocolate Magic to amend this claim if it can plead sufficient facts. I deny the motion to dismiss this claim based on all other allegations.

*2. Breach of Implied Covenant of Good Faith and Fair Dealing*

Chocolate Magic alleges that Ford breached the implied covenant of good faith and fair dealing for the same reasons as he breached the contract. It also alleges he breached by failing to use the company email system and withholding information about "the imminent loss of the operation's management team." ECF No. 1 at 15. Ford argues that this claim must be dismissed on the same grounds as the breach of contract claim.

In Nevada, "an implied covenant of good faith and fair dealing exists in *all* contracts." *A.C. Shaw Const., Inc. v. Washoe Cty.*, 784 P.2d 9, 10 (Nev. 1989) (emphasis in original). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the

justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991). "Whether the controlling party's actions fall outside the reasonable expectations of the dependent party is determined by the various factors and special circumstances that shape these expectations." *Id.* at 923–24. The question of good faith is a question of fact. *A.C. Shaw Const., Inc.*, 784 P.2d at 11.

As discussed above, a valid contract existed between the parties. With regard to the solicitation of employees to leave Chocolate Magic, it is reasonable to infer that Chocolate Magic's justified expectations for Ford included not attempting to solicit coworkers to leave their employment. With regard to the return of property, Chocolate Magic asks for limited discovery under the anti-SLAPP statute. However, such a procedural mechanism is not available at the 12(b)(6) stage. As discussed above, Chocolate Magic has insufficiently pleaded a breach regarding return of its property.

Ford does not appear to move to dismiss the other bases for this claim. Therefore, I grant the motion to dismiss this claim only as to the allegation of non-return of property. I grant Chocolate Magic leave to amend.

### 3. *Defamation/Libel*

Ford moves to dismiss Chocolate Magic's "defamation/libel" claim, which is based on statements in Ford's letter to Suzanne Jones of Hershey's. Ford argues that his statements were reasonable opinions based on fact and thus not actionable as defamatory statements. He also argues that the intra-corporate privilege applies, and that Chocolate Magic failed to plead damages. Chocolate Magic responds that Ford made a false factual statement in asserting that Chocolate Magic's policy of repurposing candy "is clearly in violation of our state health code." ECF No. 33 at 23 (quoting ECF No. 34-17 at 4). Chocolate Magic contends that the intra-corporate privilege does not apply because Ford did not work for Hershey's. It also contends that Ford was at least negligent in making this statement, and that damages are presumed because Ford's statement imputed criminal activity.

1    It is difficult to tell what specific statements the parties believe form the basis of the claim.
2    Ford's motion refers to paragraph 63 of the complaint, which states "Ford accused Chocolate
3    Magic of violating Nevada state health standards and endangering the public by re-using
4    wrapped, covered candy that had been segregated in a special collection container." ECF No. 1 at
5    11. However, the complaint lists multiple statements under the defamation claim. *Id.* at 26.
6    Meanwhile, Chocolate Magic bases its argument in its response almost entirely on one statement
7    made by Ford, that repurposing bulk candy "is clearly in violation of our state health code." ECF
8    No. 34-17 at 4. It mentions the other statements in the complaint only in the discussion of
9    damages. Because Ford also addresses only one statement, I will treat the motion as one to
10   dismiss on the basis of only this statement, not the other statements alleged by Chocolate Magic
11   to be defamatory.

12   Under Nevada law, to state a claim for defamation a plaintiff must demonstrate "(1) a
13   false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an
14   unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4)
15   actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005). As a general
16   rule, statements of opinion cannot be defamatory. *Lubin v. Kunin*, 17 P.3d 422, 426 (Nev. 2001).
17   However, a statement of opinion suggesting "that the speaker knows certain facts to be true . . .
18   will be sufficient to render the message defamatory if false." *K-Mart Corp. v. Washington*, 866
19   P.2d 274, 282 (Nev. 1993). "Certain classes of defamatory statements are . . . considered
20   defamatory per se and actionable without proof of damages," including the false imputation of a
21   crime. *Pope*, 114 P.2d at 282. Intra-corporate communications may be privileged if they occur in
22   the "regular course of the corporation's business." *Id.* at 284.

23   Ford argues that he reasonably believed that repurposing candy could result in health and
24   safety violations, so his statement was an opinion and not actionable. To distinguish an opinion
25   from an assertion of fact, I must consider "whether a reasonable person would be likely to
26   understand the remark as an expression of the source's opinion or as a statement of existing fact."

*Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001). Where a statement is ambiguous, "the question of whether it is a fact or evaluative opinion is left to the jury." *Lubin*, 17 P.3d at 426.

Ford's statement to Jones that reusing bulk candy "is clearly in violation of our state health code" suggests that he knows the fact of the violation to be true. The statement could be understood to mean that Ford believes that the store's actions clearly violate the health code, or it could be understood to mean that the actions do in fact violate the health code. While the statement is somewhat ambiguous, it is sufficient for me to reasonably infer that Ford was stating a fact that, if false, could be defamatory.

Ford argues that the intra-corporate privilege applies because Chocolate Magic and Hershey's are "essentially the same company" and he sent the letter in the regular course of business. ECF Nos. 47 at 11, 21 at 12. However, Chocolate Magic and Hershey's are not essentially the same company. Chocolate Magic has a licensing agreement with Hershey's. It is not a subsidiary or part of the Hershey's corporate structure. Therefore, the intra-corporate privilege does not apply.

"Certain classes of defamatory statements are . . . considered defamatory per se and actionable without proof of damages." *Pope*, 114 P.3d at 282. These classes include "the imputation of a crime" and "imputing the person's lack of fitness for trade, business, or profession." *K-Mart Corp.*, 866 P.2d at 282. As Chocolate Magic points out, violating the state health code is a crime. *See* Nev. Rev. Stat. § 446.945 (stating that anyone who violates the health laws governing food establishments is guilty of a misdemeanor). Therefore, Ford's statement regarding Chocolate Magic violating the state health code is an imputation of a crime and is actionable without proof of damages. Therefore, I deny Ford's motion to dismiss the defamation/libel claim.

### 4. Civil Conspiracy

Chocolate Magic alleges that Ford and his co-defendants engaged in a conspiracy by agreeing to resign together, attempting to solicit other employees to quit, making disparaging comments to subordinate staff, and instructing warehouse staff to hide damaged inventory when

Birrell or other Chocolate Magic corporate employees visited. Ford moves to dismiss this claim because Chocolate Magic did not sufficiently identify the unlawful objective which defendants' alleged conspiracy was intended to accomplish. He also argues that being aware of others' plans to resign and resigning during a two-day period does not show an agreement to quit. Ford also argues that Chocolate Magic failed to show that the defendants were acting as individuals for their individual advantage. Chocolate Magic responds that the defendants conspired to halt its operations by agreeing to resign *en masse* and soliciting subordinate staff to quit. Chocolate Magic contends that an agreement is shown because even though only Ford received a disciplinary notice in December 2016, all of the defendants filed a joint complaint with human resources the following day. Further, all of the defendants quit during a two-day period.

Under Nevada law, civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Sutherland v. Gross*, 772 P.2d 1287 (Nev. 1989). "The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." *Eikelberger v. Tolotti*, 611 P.2d 1086, 1088 n.1 (Nev. 1980). To prevail, "a plaintiff must prove an agreement between the tortfeasors, whether explicit or tacit." *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998).

Ford argues that corporate agents cannot conspire amongst themselves. *See Laxalt v. McClatchy*, 622 F. Supp. 737, 745 (D. Nev. 1985). He argues that Chocolate Magic needed to allege that the defendants were acting as individuals for individual advantage. *Id.* Chocolate Magic does not respond to this argument and thus consents to dismissal on this basis. L.R. 7-2(d). Therefore, I grant Ford's motion to dismiss the civil conspiracy claim, but grant Chocolate Magic leave to amend.

### 5. *Intentional Interference with Contractual Relations*

Chocolate Magic alleges that Ford and his co-defendants falsely represented to Hershey's that Chocolate Magic was violating health codes, convinced each other and subordinate staff to quit, arbitrarily reduced store hours, and mismanaged inventory and operations, all with the intent

to harm Chocolate Magic and induce Hershey's to breach its contract. Ford argues that Chocolate Magic has not sufficiently pleaded facts showing that he intended to induce Hershey's to breach its contract with Chocolate Magic. Chocolate Magic responds that Ford knew about the contracts with Hershey's and New York-New York, engaged in the intentionally disruptive acts of sending his letter to Jones and convincing employees to resign, and caused disruption in its contractual relationships as well as actual damages. Because Ford moves only on the allegations regarding Hershey's and not New York-New York, I analyze only that part of the claim.

To state a claim for intentional interference with contractual relations, a plaintiff must show "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003). The plaintiff "must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff." *Id.* at 1268.

In *Operation Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, the plaintiff alleged that the defendant production company slandered the plaintiff to third party sponsors and made the plaintiff alter its eventually aborted production of an awards show. Case No. 2:12-cv-00214-MMD-GWF, 2012 WL 59864444, *3 (D. Nev. Nov. 28, 2012). The court held that these allegations were sufficient to show that the defendants intentionally took steps to interfere with the plaintiff's contract with the television company that was to broadcast the show. *Id.* Similarly, Ford allegedly defamed Chocolate Magic to Hershey's and took steps to negatively affect the store's success. Chocolate Magic has alleged sufficient facts to plausibly show that Ford intended to disrupt its relationship with Hershey's. Therefore, Ford's motion to dismiss this claim is denied.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Ford's motion to dismiss **(ECF No. 21) is GRANTED IN PART**. The special motion to dismiss pursuant to Nevada Revised Statute § 41.660 is denied. The motion to dismiss the breach of contract claim is granted as to the claim

based on the non-return of property but denied as to all other allegations. The motion to dismiss the breach of implied covenant claim is granted as to the non-return of property but denied as to all other allegations. The motion is denied as to the claims of "defamation/libel" and intentional interference with contractual relationship. The motion to dismiss the civil conspiracy claim is granted. Chocolate Magic is granted leave to amend its complaint if it can allege sufficient facts to cure the defects discussed in this order. If it intends to do so, Chocolate Magic shall file an amended complaint within 14 days of entry of this Order.

DATED this 17th day of January, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE