# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CHOCOLATE MAGIC LAS VEGAS LLC,

    Plaintiff

v.

BLAIR ELLIOT FORD JR., CINDY WIX-INGLING, NORMAN VIDA, and ALICE KELLY,

    Defendants,

Case No.: 2:17-cv-00690-APG-NJK

**ORDER (1) DENYING PLAINTIFF'S MOTION TO STRIKE AND (2) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**

[ECF Nos. 68, 70, 72]

    Defendants Blair Elliot Ford, Jr. (Ford), Cindy Wix-Ingling (Wix-Ingling), Norman Vida (Vida), and Alice Kelly (Kelly) worked for plaintiff Chocolate Magic Las Vegas LLC (CM). In late 2016 and early 2017, the relationship deteriorated to the point that the defendants resigned or were terminated. In the aftermath, CM sued these former employees on multiple causes of action. Some of these employees have asserted counter-claims against CM and counter-defendants Dino Dicienzo and Douglas Birrell.

    CM filed an amended complaint, to which Wix-Ingling and Ford answered. ECF Nos. 65, 66, and 67. Both of those answers asserted the affirmative defense of failure to state a claim upon which relief can be granted. Wix-Ingling thereafter filed a motion to dismiss the amended complaint and Ford joined that motion. ECF Nos. 68 and 70. CM and the counter-defendants oppose and move to strike the motion to dismiss. ECF Nos. 73 and 72.

    I deny the motion to strike. Wix-Ingling and Ford asserted the Federal Rule of Civil Procedure 12(b)(6) defense in their answers to CM's amended complaint and thereby preserved their right to seek dismissal on that ground later. I grant the defendants' motion to dismiss in

part and dismiss the portion of CM's breach of contract claim that alleges a violation of the no-raiding provision. That provision prohibits raiding only after employment is terminated, but CM's amended complaint alleges that the improper behavior occurred during employment. I deny the motion to dismiss the remaining claims.

**I.  BACKGROUND**

CM operates the Hershey's Chocolate World Las Vegas retail attraction under a licensing agreement with The Hershey Company (Hershey's), and a lease agreement with the New York-New York Hotel & Casino. ECF No. 65 at 5. CM is managed and directed from Canada. *Id*. CM hired Ford to be general manager and Wix-Ingling to be assistant general manager before the attraction opened in June 2014. *Id.* at 6. Upon recommendation of Ford and Wix-Ingling, Vida and Kelly were hired as assistant general manager and replenishment manager, respectively. As the general manager, Ford was tasked by CM with continually improving the store's profitability with assistance from Wix-Ingling, Vida, and Kelly. *Id.* at 7. Ford and Wix-Ingling were given control over the store's inventory and responsibility for product development. *Id*.

By summer of 2016, sales were 25% below budget while expenses continued to grow. *Id*. The store's profitability declined 90% year over year in August 2016, while there was a significant increase in overtime payments. *Id*. CM hired Douglas Birrell, a consultant, to "oversee a course correction." *Id*. at 8. Ford and his co-defendants allegedly instructed employees to refrain from reporting any problems or concerns to Birrell or CM's corporate office. *Id*. After an investigation, Birrell emailed Ford regarding the need to turn the store around. *Id*.

In November 2016, Hershey's conducted a two-day assessment of Hershey's Chocolate World Las Vegas. *Id*. at 9. A "sharply negative and critical" written assessment was provided to

Birrell, who forwarded it to Ford. *Id*. CM issued Ford a disciplinary notice on December 1, 2016. *Id*. Ford shared this notice with his co-defendants, and the following day all four lodged a complaint with CM's human resources department alleging a hostile work environment. *Id*. According to CM, this complaint was spurious and made as a protest by the defendants because they believed that they would soon be terminated. *Id* at 10.

CM alleges that at that time, Ford and his co-defendants attempted to convince staff to quit and made disparaging comments about CM to them. *Id*. at 10. On January 11, 2017, Ford advised CM that Vida was resigning. *Id*. The next day, Ford, Wix-Ingling, and Kelly tendered their resignations. *Id*. Ford then sent a letter to Suzanne Jones, an executive at Hershey's, in which he "accused Chocolate Magic of violating Nevada state health standards and endangering the public by re-using wrapped, covered candy that had been segregated in [a] special collection container . . . ." *Id*. at 10.

CM reassigned at least three employees from other operations to Hershey's Chocolate World Las Vegas on an emergency basis. *Id*. at 11. It hired an inventory consultant and discovered that thousands of dollars' worth of product was spoiled or missing. *Id*. CM terminated Kelly before her resignation date and put Ford on paid vacation leave until his resignation became effective. *Id*. at 12. This lawsuit followed.

## II. MOTION TO STRIKE

CM and the counter-defendants move to strike the motion to dismiss, arguing that Federal Rule of Civil Procedure 12(b) requires defenses to be made prior to filing an answer but that Wix-Ingling and Ford moved to dismiss after they filed their answers to the amended complaint. ECF 72. Wix-Ingling and Ford respond that by including Rule 12(b)(6) defenses in their answers, they retained the right to subsequently move to dismiss on those grounds. They are correct.

3

In addressing the timing of defenses, Rule 12(b) states, "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."  However, this court has allowed post-answer motions when the applicable defense was included in the answer. *Bank of Am., N.A. v. Regency Vill. Owner's Ass'n, Inc.*, No. 2:16-cv-00496-GMN-CWH, 2017 WL 2817882, at *3 n. 1 (D. Nev. June 29, 2017) (finding that the defendant "asserted the defense that BANA failed to state a claim in its Answer . . . and thus, did not waive that defense by filing its Answer before filing the Motion to Dismiss.").

In their separate answers to Chocolate Magic's amended complaint, Wix-Ingling and Ford asserted the affirmative defense of failure to state a claim. ECF Nos. 66 at 23 and 67 at 20. By doing this, both Wix-Ingling and Ford preserved the right to move to dismiss on that ground after their responsive pleadings.

Even if the defendants had failed to raise the Rule 12(b)(6) defense in their answers, I could treat their motion as a 12(c) motion for judgment on the pleadings. *See Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) ("Here, the Defendants filed their motion to dismiss *after* filing their answer.  Thus, the motion should have been treated as a motion for judgment on the pleadings, pursuant to Rule 12(c) or 12(h)(2)." (emphasis in original)).  Because Rule 12(c) and 12(b)(6) motions are "functionally identical," treating the defendants' 12(b)(6) motion to dismiss as such would not change my analysis of the issues. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *see also Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017).  I therefore deny CM's motion to strike defendants' motion to dismiss.

/ / / /

/ / / /

### III. MOTION TO DISMISS

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A. Breach of Contract**

In its first and third causes of action, CM claims that both Wix-Ingling and Ford breached their employment contracts in three ways: (1) by violating a "No Raiding Employees" provision, (2) by failing to render the services for which they were hired, and (3) by engaging in additional bad behavior, including intentionally withholding business-related information and submitting knowingly false complaints to CM's human resources department. Defendants seek to dismiss all three portions of this claim.

    1. <u>No-Raiding of Employees Provision</u>

Each of the defendants' employment contracts provides that "for a period of one (1) year immediately following his/her termination of employment with the Employer for any reason, he/she will not, directly or indirectly, solicit or attempt to solicit any employee of the Employer

5

to leave his or her employment . . . ." ECF No. 76-1 at 6.[1] CM's amended complaint alleges that the "raiding" occurred in the months leading up to the defendants' departure. The defendants argue that because the alleged behavior occurred while defendants were actively employed, there was no contractual violation according to the strict terms of the contract. CM responds that such a limited interpretation of the No-Raiding of Employees provision would be inappropriate and that the intent of the agreement covers behavior during employment or at least immediately preceding termination.

"It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written." *Ellison v. Cal. State Auto. Assoc.*, 797 P.2d 975, 977 (Nev. 1990); *see also State Dep't of Transp. v. Eighth Judicial Dist. Ct. in & for Cty. of Clark*, 402 P.3d 677, 682 (Nev. 2017). Here, the prohibition in the contract begins after termination. Accordingly, the alleged behavior does not constitute a violation of the no-raid provision, so I dismiss this portion of the claim against Wix-Ingling and Ford.

2. Failing to Render Services and Other Behavior in Breach of Contract

In responding to CM's second and third claims for breach of contract, the defendants argue that mere poor performance is not sufficient to find liability for breach of contract,

---

[1] Although CM references language from the employment contracts in its amended complaint, it does not attach the actual contract to its pleading. In their motion to dismiss, the defendants argue that the full language of the provision shows grounds for dismissal, and they attach the full contract to their motion. Normally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). As an exception to this general rule, however, "a court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Id.* at 688 (quoting *Branch v. Tunnell,* 14 F.3d at 453 (9th Cir.1994)). "If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily relies' on them. *Id.* at 688 (quoting *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir.1998). Here, CM's breach of contract claim relies on the contracts, and the defendants do not contest the authenticity of the contracts or their language.

particularly when employment is at will.  CM responds that the employment contract made between CM and the defendants expressly stipulated that employees "shall be required to perform all duties and responsibilities as the Employer may from time to time direct," and that they "devote [their] entire working time, attention and efforts to the business and affairs of the employer." ECF No. 68-1 at 3.  CM posits that its amended complaint alleges more than just poor performance on the defendants' part, including dishonesty, withholding of information, and the active undermining of CM's business interests.

I have previously expressed concern with "the concept of an employer suing its employee for breach of an at-will employment contract based on alleged poor performance." *Wilson v. Nevada Affordable Hous. Assistance Corp.*, No. 2:15-cv-01387-APG-CWH, 2017 WL 1276055, at *2 (D. Nev. Mar. 30, 2017).  However, *Wilson* concerned a contractual relationship in which there were no provisions specifically addressing the expected performance of employees.  In this case, the defendants' contracts included provisions requiring them to do as CM directs and to devote their working time to the interests of CM, both of which provide identifiable standards to determine breach.

Taken CM's allegations as true, Wix-Ingling and Ford repeatedly refused to utilize product inventory according to CM's requests and withheld important information regarding other employee's intentions to leave CM. ECF No. 65 at 7-9.  Additionally, Ford refused to participate in an audit of inventory and refused to use CM's provided email system. ECF No. 65 at 12 and 14.  According to CM, Wix-Ingling and Ford engaged in actions intended to undermine CM and its business interests, including lying to CM regarding Nevada's overtime laws, submitting false reports to CM's human resources department, preventing employees from submitting negative reports to CM, and attempting to convince other employees to quit their

employment. These constitute sufficient facts to support a claim for breach beyond mere poor performance. I therefore deny defendants' motion to dismiss these portions of the breach of contract claim.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

In its second and fourth causes of action, CM alleges that both Wix-Ingling and Ford breached the duty of good faith and fair dealing by engaging in all the actions described in the breach of contract claim. CM alleges that these actions were done intentionally, with malice towards CM and its interests. The defendants again argue that mere poor performance is not sufficient to find liability for breach. Additionally, they argue that CM failed to show that the defendants' actions were deliberate in contravening the "intention and spirit of the contract . . . ." *Wilson*, 2017 WL 1276055, at *3.

Under Nevada law, "an implied covenant of good faith and fair dealing exists in *all* contracts." *A.C. Shaw Const., Inc. v. Washoe Cty.*, 784 P.2d 9, 10 (Nev. 1989). An individual breaches the implied covenant of good faith and fair dealing when it "performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied . . . ." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991). "Whether the alleged breaching party's 'actions fall outside the reasonable expectations of the [other] party is determined by the various factors and special circumstances that shape these expectations.'" *Wilson*, 2017 WL 1276055, at *3 (quoting *Hilton Hotels*, 808 P.2d at 924).

Taking CM's allegations as true, Wix-Ingling and Ford repeatedly refused to utilize product inventory according to CM's requests and withheld important information. ECF No. 65 at 7-9. Additionally, Ford refused to participate in an audit of inventory and refused to use CM's

provided email system. ECF No. 65 at 12 and 14.  According to CM, Wix-Ingling and Ford engaged in actions intended to undermine CM and its business interests, including lying to CM regarding Nevada's overtime laws, submitting false reports to CM's human resources department, preventing employees from submitting negative reports to CM, and attempting to convince other employees to quit their employment.  Considered with the fact that the defendants were the top managers at the CM location and were therefore in positions requiring an unusual amount of trust on CM's part, these allegations are sufficient to support a claim for breach of the implied covenant.  I therefore deny the defendants' motion to dismiss these claims.

**C. Defamation and Slander**

In its tenth cause of action, CM asserts a defamation and slander claim against both Wix-Ingling and Ford for informing other employees that CM intended to fire them.  CM alleges that the defendants knew these statements were false and made them "with intent to injure Chocolate Magic in its name and reputation." ECF No. 65 at 24.  The defendants move to dismiss these claims on three grounds: (1) defamation can be asserted only against individuals, (2) the alleged communications are covered by the intracorporate privilege, and (3) the alleged communications do not constitute defamation because they were opinion, not factual statements.

1. <u>Availability of Defamation</u>

The defendants argue that under Nevada law, only individuals, not business entities such as CM, may sue for defamation or slander.  CM responds that defamation is available to companies and its claim is proper because the defendants impugned CM's business reputation.

Both sides rely on *Clark County v. Virtual Education*, 213 P.3d 496, 505 (Nev. 2009).  But *Virtual Education* does not expressly answer the question whether a business entity may sue for defamation.  *See Cohen v. Hansen*, No. 2:12-cv-1401-JCM-PAL, 2015 WL 3609689, at *6

(D. Nev. June 9, 2015) (stating that "the Nevada Supreme Court has not 'clearly stated whether a corporation or other business entity can proceed on a theory of defamation per se where communications concern the business's product or injure the business's reputation.'"). Given the absence of controlling state law, I must anticipate how the Supreme Court of Nevada would decide the issue. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). Another judge in this district has predicted that the court would allow such a claim. *Cohen*, 2015 WL 3609689, at *6. I agree. The *Virtual Education* court spent considerable effort addressing the distinction between defamation per se and business disparagement, which suggests that defamation of a business is a possible claim, even if that court ultimately concluded that business disparagement was the appropriate claim in that case.[2] *Virtual Educ.*, 213 P.3d at 504. I therefore deny the defendants' motion to dismiss this claim on the grounds that defamation is not available to CM as a business entity.

### 2. Intracorporate Privilege

The defendants alternatively argue for dismissal on the ground that the alleged communications are covered by the intracorporate privilege because they were made to CM employees in the course of CM-related business. The defendants posit that discussions between managers and employees regarding termination are a regular business activity. CM responds that knowingly false communications that are made out of ill will and with the intent to harm the company are not privileged because such statements are not made in the regular course of business or with any right or duty related to the business.

---

[2] I grant CM leave to amend to add a business disparagement claim if it chooses to do so and if it can plausibly allege facts to support such a claim.

In Nevada, the intracorporate privilege covers communications between individuals in a corporation only "if the communication occurs in the regular course of the corporation's business . . . ." *Pope v. Motel 6*, 114 P.3d 277, 284 (Nev. 2005), at 284. But the privilege does not apply if the communications were made in bad faith, with malice, or while knowing they are false. *See Gallues v. Harrah's Club*, 491 P.2d 1276, 1277 (Nev. 1971).

CM alleges that the defendants' communication to their employees was knowingly false and made with the intent to harm CM's business interests. ECF No. 64 at 24. Taking these allegations as true, the intracorporate privilege would not apply. I therefore deny the defendants' motion to dismiss on the grounds that the alleged communications are covered by the intracorporate privilege.

### 3. Statements of Opinion or Fact

The defendants also argue that the alleged communications do not constitute defamation because they were given as opinion, not factual statements. They argue that because they were managers who had the power to terminate employees, a reasonable person would believe that any assertion that CM was going to fire employees would be understood as the defendants' own opinions. CM responds that managers are understood to be privy to information from corporate headquarters, and therefore any statement regarding employment would be understood by employees as an unequivocal statement of fact regarding the company's intentions.

To succeed on a defamation claim, Nevada law requires "a false and defamatory statement of fact by the defendant concerning the plaintiff." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (quoting *Pope*, 114 P.3d at 282). "[S]tatements of opinion as opposed to statements of fact are not actionable." *Nev. Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 341 (Nev. 1983). In determining whether a statement is opinion or fact, I must consider

whether, given the context in which the statement is made, "a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Nev. Indep. Broad. Corp.*, 664 P.2d at 342.[3]

CM alleges that Wix-Ingling and Ford told other CM employees, over whom Wix-Ingling and Ford had managerial authority, that CM intended to fire those employees. CM further alleges that these statements were made unequivocally, with the knowledge that they were false, and with the intention of harming CM. ECF No. 65 at 24. Taking CM's allegations as true, CM has plausibly alleged that the employees could have reasonably understood these communications as statements of fact. I therefore deny the defendants' motion to dismiss this claim on the grounds that the alleged statements are statements of opinion.

**D. Civil Conspiracy**

In its eleventh cause of action, CM claims that both Wix-Ingling and Ford engaged in civil conspiracy by agreeing to resign *en masse*, attempting to convince other employees to quit employment, making disparaging comments to employees so they would quit, and deliberately concealing poor performance by frustrating CM's attempts to obtain inventory records. The defendants argue this claim should be dismissed because: (1) there is no underlying tort and (2) the agreement between and participation of the defendants in the alleged conspiracy was not described with the necessary specificity.

////

////

---

[3] Although ordinarily the fact/opinion issue is a question of law for the court, where the statement is ambiguous, the issue must be left to the jury's determination. *Nev. Indep. Broad. Corp.*, 664 P.2d at 342.

### 1. Underlying Tort

The defendants argue that the civil conspiracy claim must be dismissed because there is no commission of an underlying tort for which there was a conspiracy to commit. They argue that breach of contract is not a tort claim and that CM cannot use defamation and slander as the underlying tort because it should be dismissed. CM responds that the defamation and slander claim should not be dismissed and can therefore be used to bring the civil conspiracy claim.

I have not dismissed CM's defamation claim or its intentional interference with contractual relations claim, so CM has plausible underlying torts on which to base the civil conspiracy claim. I therefore deny the defendants' motion to dismiss the civil conspiracy claim on the grounds that there is no underlying tort.

### 2. Necessary Specificity

The defendants also argue that CM's conspiracy claim lacks the particular specificity required for civil conspiracy claims under Nevada law, citing *Vo v. American Brokers Conduit*. No. 3:09-cv-00654-LRH, 2010 WL 2696407 (D. Nev. July 2, 2010). They suggest that CM's liberal use of "defendants" in describing the alleged conspiracy bars it from making such a claim because the specific actions of each defendant in relation to the conspiracy are not outlined. CM responds by citing numerous allegations in the amended complaint that include specific details regarding the defendants' actions, and argues that such allegations are sufficient to put defendants on notice. Wix-Ingling replies by highlighting that each of the references included in CM's response uses "defendants" as opposed to individualized identifiers.

The defendants rely on the ruling in *Vo*, where this court found that the plaintiff failed to plead a claim for civil conspiracy because she did not "identif[y] how each individual defendant participated or joined in the conspiracy." *Vo*, 2010 WL 2696407, at *2. But *Vo* and the cases it

cites address claims for civil conspiracy to commit fraud, invoking Rule 9(b)'s requirement of stating the circumstances constituting fraud "with particularity." In the current case, the claim for civil conspiracy is not based on fraud or mistake. Thus, the amended complaint must only describe the defendants' actions adequately enough to put the defendants on notice of the particular misconduct that constitute the civil conspiracy claim.

CM's amended complaint provides an approximate date when the conspiracy began, describes behavior that is plausibly synchronized and motivated by a desire to harm CM, and when appropriate provides descriptions of individualized behavior. ECF 65 at 9-11. Reading the complaint as a whole, the defendants have fair notice under Rule 8, and CM has established a basis for the claim. I therefore deny the defendants' motion to dismiss the claim on the grounds that the alleged civil conspiracy was not described with sufficient specificity.

### E. Intentional Interference with Contractual Relations

In its twelfth cause of action, CM claims that Wix-Ingling and Ford intentionally interfered in CM's contractual relations with both Hershey's and New York-New York by conspiring to resign *en masse*, attempting to convince other employees to quit, arbitrarily reducing the hours of CM staff, mismanaging inventory, and falsely reporting to Hershey's that CM was violating the health code. CM alleges that these actions resulted in a costly emergency re-assignment of employees from Canada and Illinois and prompted New York-New York representatives to demand a meeting with CM to address rumors of a mass resignation.

Wix-Ingling argues that CM's amended complaint fails to allege she engaged in conduct related to Hershey's. Both defendants also argue that the amended complaint contains no specific, individualized allegations of activities, and that the generalized allegations do not allege

intentional acts done to disrupt the contractual relationship. Additionally, the defendants argue that no damage resulted from their behavior because none of the employees actually resigned.

A claim for intentional interference with contractual relationship must establish "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (quoting *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989)).

CM has plausibly alleged a claim for intentional interference with contractual relations. As with the claim for civil conspiracy, the allegations are made with sufficient specificity to provide the defendants with adequate notice. Further, the amended complaint asserts the necessary elements for this claim. CM alleges that the defendants lodged spurious complaints with CM's human resources department, attempted to convince CM staff to resign simultaneously, and sent a defamatory letter to Hershey's,[4] all of which was done with the intention of disrupting the contractual relationships CM has with Hershey's and New York-New York as retribution for what the defendants felt was unfair treatment. CM alleges a plausible connection between those acts and the disruption of CM's contracts with both Hershey's and New York-New York, and it describes damages that may have been caused by the alleged conduct. ECF 65 at 9-12. I therefore deny the defendants' motion to dismiss the claim on the grounds that the necessary elements of the claim were not alleged in the pleadings.

---

[4] In her motion to dismiss, Wix-Ingling argues that CM inappropriately lumped defendants together in regard to the letter to Hershey's. She is correct. In discussing the claim for intentional interference of contractual relations, CM alleges that "[d]efendants falsely represented to the Hershey Company that Chocolate Magic was violating health codes." ECF No. 65 at 27-28. But the amended complaint identifies only Ford as the one who sent the letter. *Id.* at 10-11. However, the other allegations are sufficient to plausibly allege Wix-Ingling's intentional interference with CM's contract with Hershey's.

15

## IV. CONCLUSION

IT IS THEREFORE ORDERED that plaintiff Chocolate Magic's motion to strike defendants Wix-Ingling and Ford's motion to dismiss **(ECF No. 72)** is **DENIED.**

IT IS FURTHER ORDERED that Wix-Ingling's motion to dismiss **(ECF No. 68)** and Ford's joinder to that motion **(ECF No. 70) are GRANTED in part.** The portion of Chocolate Magic's claim for breach of contract due to a violation of the no-raid provision is dismissed with prejudice.

DATED this 14th day of September, 2018.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE